## HAWKINS *vs.* NELSON.

[DETINUE FOR HORSE.]

1. *Capture of private property on land in time of war.*—The general principle of international law, to which there are admitted exceptions, is now universally acknowledged, that private property on land is exempt from capture and confiscation in war; and this principle was recognized by the government of the United States during the late war, in the published orders of its authorized officials, however much it may have been disregarded or abused in the operations of its armies in the field.

2. *Same; burden of proof.*—Where it appears that the horse in controversy was forcibly taken by the United States army during the war, from the possession of the defendant, to whom it belonged, and who was a non-combatant; was branded as government property, and carried into another county, where it was abandoned, and left on the plaintiff's premises, and was afterwards peaceably regained by the defendant, without the knowledge or consent of the plaintiff; the plaintiff cannot recover in detinue, without showing affirmatively that the capture was authorized by the laws of war, as recognized by the United States government in the published orders of its authorized officials.

APPEAL from the Circuit Court of Walker.
Tried before the Hon. WM. S. MUDD.

THIS action was brought by Nathaniel Hawkins, against
Isaac S. Nelson, to recover a horse, together with damages for
his detention; and was commenced on the 19th February,
1866. " On the trial," as the bill of exceptions states,
" the evidence showed that, on Tuesday, the 28th day of
March, 1865, the horse sued for was the property of the
defendant, and was in his possession in said county, and
was forcibly taken from his possession, on that day, by the
United States army under the command of General Wilson;
that the horse, after being seized as above stated, was
carried by said army to Elyton in Jefferson county, was
branded 'U. S.', in the usual manner in which government
horses are branded, and was left by said army in the
plaintiff's lot, on the Saturday next after the said seizure;
that the plaintiff claimed and used said horse, from that
time, as his own, and continued in the possession of it
until September, 1865, when it was taken from his posses-
sion, without his knowledge or consent, by the defendant.
It was shown, also, that the horse was in the defendant's
possession at the commencement of the suit, and was
worth one hundred and twenty-five dollars; and that the
defendant had resided for many years in said county, and
was a non-combatant. There was no evidence tending to
show that the defendant had afterwards acquired any title
or possession to the horse, from any source whatever after
it was taken from him as above stated, except the posses-
sion which he thus acquired in September, 1865; nor was
there any evidence tending to show that the plaintiff, after
he acquired possession as above stated, ever parted with
any right or title which he thereby acquired.

" Upon this evidence, the court charged the jury, that if
the horse sued for was the property of the plaintiff
on the 28th March, 1865, and was forcibly taken from
his possession, on that day, by the army of the United
States; and that the defendant had never parted with his
title or possession, otherwise than by the capture or seizure
by the United States army, as set forth above in the state-

ment of the evidence,—then they must find a verdict for the defendant. The plaintiff excepted to this charge, and requested the court to instruct the jury, that if the horse was taken from the defendant by the army of the United States, on the day, and in the manner set forth in the evidence, and was branded by said army, and was left by them in the plaintiff's lot, and was kept, and claimed, and used by him, as his own, until the September following, and was in the defendant's possession at the commencement of the suit,—then the plaintiff would be entitled to recover, unless there was evidence before them to satisfy them that he had voluntarily parted with the possession, or with the title he had thus acquired. The court refused to give this charge, and the plaintiff excepted."

The refusal of the charge asked, and the charge given by the court, are now assigned as error.

PORTER & MARTIN, for appellant.
RICE, SEMPLE & GOLDTHWAITE, contra.

JUDGE, J.—In the general operations of war, it is now the true and universally acknowledged rule of the law of nations, that private property, on land, is exempt from capture and confiscation.—Gardner's Institutes, 612. This exemption extends even to the case of an absolute and unqualified conquest of the enemy's country.—Wheaton's Int. Law, 346–7. And eminent publicists contend, that "the moral sense of mankind will soon compel all christian nations to abstain from pirating on private property and persons non-combatant, at sea, as well as on land. The principles of the gospel—the basis of public law—require that war by sea and land should respect private persons and property."—Gardner's Institutes, 619.

But to the general rule of international law above stated, there are exceptions. Private property may be taken from enemies in the field, or in besieged towns, or by levies of military contributions, or when it is contraband of war, or necessary for supplies or military purposes.—See note by Dana to Wheaton's International Law, and authorities therein cited, on page 347.

During the progress of the recent war in the United States, the general rule above stated was recognized by that government in the *published orders* of its authorized officials, however much it may have been disregarded or abused in the operations of armies in the field. In General Orders No. 107, from the war department, of date August 15, 1862, issued by command of Major-General Halleck, then "General-in-chief of the army", the following paragraph occurs: "III. The laws of the United States, and the general laws of war, authorize, in certain cases, the seizure and conversion of private property, for the subsistence, transportation, and other uses of the army; but this must be distinguished from pillage, and the taking of property for *public* purposes is very different from its conversion to *private* uses. * * * The 52d article of war authorizes the penalty of death for pillage or plundering", &c. And an order of the president of the United States, issued from the war department, on the 16th of August, 1862, contains the following: "*First*—Ordered, that military commanders, within the States of Virginia, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, and Arkansas, in an orderly manner, seize and use any property, real or personal, which may be necessary or convenient for their several commands, as supplies, or for other military purposes; and that, while property may be destroyed for proper military objects, none shall be destroyed in wantonness or malice."

Whether the wholesome injunction against the destruction of property "in wantonness or malice", was in all cases observed, it were needless now to inquire. The horse which is the subject of this suit, was the private property of a noncombatant, and, *prima facie*, not liable to capture. It does not appear from the record, that any evidence was introduced by the plaintiff in the court below, on whom was the burden of such proof, showing that the capture was within any one of the exceptions to the general rule above laid down, or that it was authorized by any military commander, under the laws of the United States and the general laws of war. The horse having been abandoned by those who took him, the rightful owner, under the circumstances, was

authorized peaceably to re-possess himself of the property.

It follows that the circuit court did not err in the charge given to the jury, nor in the refusal to charge as requested.

Judgment affirmed.