## Smith, *et al.*, *v.* Graves.

Replevin. In a replevin suit, the court properly refused to instruct that "if the proof satisfied the jury that the plaintiffs owned the horse on the first of January, 1864, and that the defendant took him about that time, they should find for the plaintiffs," as there was no testimony tending to show any taking about that time.

It was proper for the court to *instruct* that, "if the jury found that plaintiffs owned the horse about June, 1864, and that he was then taken by the defendant, they must find for the plaintiffs," as there was testimony to show that the horse was taken about that time.

In a replevin suit, to insure a recovery, it must be shown that *all* the plaintiffs owned the property, or were entitled to the possession thereof.

Title shown to exist shortly before the suit raises a *presumption* of continued ownership.

The orders of Confederate officers did not justify the taking of property. It is no defense to a replevin suit that the defendant took the property from a citizen within the Federal lines, which the defendant seized as a Confederate soldier, and by *command* of his superior officer, who authorized him to retain the property as his own.

*Appeal from Phillips Circuit Court.*

Hon. James M. Hanks, Circuit Judge.

Palmer & Wygant, for appellant.

The only question presented was whether the horse in question was a lawful prize of war? It does not appear that defendant was sent into the Federal lines by order of his superior officer; or that he had any authority to take the horse for the use of the. Confederate authorities. But, even if it had been so, while the order of his. superior officer might protect the soldier from an action for trespass, the act complained of could not divest plaintiffs of their property. *Hedges v. Michael, Court of Appeals of West Va., reported in 2 Am. Law Review*, 190; *Yost v. Stout*, 4 *Cold.*, 205; *Witherspoon v. Moody, ib.,*

605; *Hawkins v. Nelson*, 40 *Ala.*, 553; *Barnhill v. Phillips*, 4 *Cold.*, 1; *Taylor v. Jenkins*, 24 *Ark.*, 337; *Short v. Wilson*, 2 *Bush.*, 606. The citizen of a belligerent State is not necessarily a belligerent himself. To constitute him such, he must be engaged in the war himself. Plaintiffs were engaged in peaceful avocations, under the protection of their government, and defendant's act was a private trespass. *Bassett v. Green*, 2 *Duvall*, 560; *Porter v. Botts*, 2 *Duvall*, 365. As to what constitutes an individual a belligerent, see *Hammond v. The State*, 3 *Cold.*, 129; *Cochran v. Tucker*, 3 *Cold.*, 186.

English, Gantt & English, for appellee.

By the laws of war the horse was the subject of capture. The humanity and policy of modern times have abstained from the taking of private property, *not liable to direct use in war*. If the hostile power has an interest in the property, which is *available* to him for the purposes of war, that fact makes it, *prima facie*, *a subject of capture*. *Wheat. Int. Law*, *(8th ed.,)* 171.

A private soldier of the rebel army may rely upon the belligerent rights awarded the late so-called Confederacy, as a defense in a civil suit for property taken according to the usages of war. *Hughes v. Litsey, et al.*, *Law Reg.*, *vol.* 5, 148.

Gregg, J. .

On the 27th of September, 1865, the plaintiffs commenced their action of replevin, in the *cepit*, in the Phillips circuit court, against the defendant, for a sorrel horse. Service of process was had, and at the December term, 1865, of that court, the defendant appeared and filed four pleas: 1. Not guilty; 2. *Non cepit;* 3. That the horse was not the plaintiffs', but that he was the defendant's property; 4. That the horse was the defendant's property, and not the property of the plaintiffs, and should be returned to the defendant. Upon which pleas

issues were had; a jury was called; trial had; verdict and judgment for the defendant. Plaintiffs moved for a new trial, which was granted..

In June, 1866, the parties again appeared, and went to trial before a jury. The jury found for the defendant, and valued the horse at two hundred dollars, for which sum the court rendered judgment against the plaintiffs, who -then filed [their motion for a new trial ; the defendant remitted $50 of the damages, and the court overruled the motion, to which ruling the plaintiffs excepted, tendered their  bill of exceptions, and brought the case up by appeal.

The first and fourth pleas of the defendant might well have been stricken out, but plaintiffs joined issue upon each.

The plaintiffs proved title before and up to the time of the taking, and that they lost the horse from  the woods or range near. Helena, from which place the  defendant admitted he took the horse.  The defendant offered to prove that the horse was taken within the Federal military lines; that the plaintiffs were planters within such lines, and under Federal protection ; that the defendant was a Confederate soldier, under the command of Col. Dobbins, of the Confederate army, then on duty near said lines ; and that, while on a scout with one or two other Confederates, ordered to look around the Federal lines, he entered within the lines and picked up the horse, took him to camp, and was told by Col. Dobbins to keep him and turn another horse or mule in the corral, and  he did turn in the black mule that he had brought from home.

The plaintiffs objected to the introduction of such proof, but the court overruled their objection, and allowed such evidence to be made, to which plaintiffs excepted.

Each party asked several instructions.  The court refused to give any of the plaintiffs' instructions, and gave all the defendant's, to all of which the plaintiffs excepted.

Plaintiffs' first instruction was:  " That if the proof satisfied the jury that plaintiffs owned the horse on the first of January, 1864, and that defendant took him about that

time, they should find for plaintiffs." There was no testimony of any taking about that time, and the court might well have refused such instruction.

The next four instructions amount, in effect, to a charge that, if the jury find from the evidence that plaintiffs owned the horse about June, 1864, and that he was then taken by the defendant, they must find for the plaintiffs. These instructions, except some repetition, embodied sound law, and should have been given. Plaintiffs' instructions, from six to ten inclusive, were to the effect, that, under the pleadings and proof in this case, the defendant could not justify his taking by reason of being a Confederate soldier; that the taking the horse from a citizen within the Federal lines, and delivering a mule to his superior Confederate officer for the privilege of keeping said horse, did not invest the title of the horse in the defendant. The court also erred in refusing to give these instructions.

The defendant's first instruction was correctly given. His second was, "that ownership in the spring of 1864 would not justify a recovery, without proof of ownership by all the plaintiffs at the bringing of the suit." Title so recently before the taking would raise a presumption of continued ownership; and, if uncontradicted, as in this case, would authorize a finding of that fact, and hence that instruction was calculated to mislead the jury, and ought not to have been given. The third, seventh and eighth instructions of the defendant were the opposite of the sixth, seventh, eighth, ninth and tenth instructions asked by the plaintiffs, and should have been refused. Defendant's fourth, fifth and sixth instructions may be considered rather abstract, but we see no valid objection to them.

The defendant rested upon a general denial of the allegation of taking, and of the right of property in himself. He made no cognizance, plead no special plea, gave no notice of matters "which, if pleaded by avowry, cognizance or special plea, would have been a bar to the action, and which, under the statute, would have authorized him to give such matters in

evidence." Under the practice at that time, and the well understood common law rule that the " *allegata et probata* " must correspond, he was not entitled to such proof. The plaintiffs were not required to meet questions in proof that had in no way been brought to their notice by any proceeding before the court, and upon that ground the court ought to have sustained the plaintiffs' objection to the admission of such evidence; but such evidence should have been disallowed for the better reason that the facts, if formally averred and proved, would not have defeated the plaintiffs' title or justified the defendant's taking. See *Hodges v. Michael, Court of Appeals, West Va.*; *Barnhill v. Phillips,* 4 *Cold.,* 1; *Yost, et al., v. Stout, ib.,* 205; *Witherspoon v. Moody, ib.,* 605; *Hawkins v. Nelson,* 40 *Ala.,* 553; *Witherspoon v. Moody,* 5 *Cold.,* 169; *Beck v. Ingram,* 1 *Bush.,* 555; *Terrell v. Rankin,* 2 *Bush.,* 453.

For these errors the judgment is reversed, and the case remanded, to be proceeded in according to law.